Peck, J.
It is apparent, from the clause in the will of George Harness, Jr., copied into the statement of this case, that he thereby intended to devise, in the first instance, nothing more than a life estate to his four children; and it is equally apparent that, in case any of his said children should die leaving children, or remote descendants living at his or her decease, it was his intention that such living children, and the then living descendants of such as may have pre-decea.sed, should together take the estate. The words are, “ and at either of their (the testator’s children’s) deaths, his or her share (I devise) to his or her child or children (then) living, and the descendants of those who may be dead, equally, to be divided per stirpes.”
It appears from the agreed statement, that two of Mrs. Turley’s children, born after the making of the will — Catharine (Turley) Cunningham and Susan (Turley) Johnson — died before their mother, each leaving two children, who were living when Mrs. Turley died, and it is obvious that if the declared intent of the testator is to prevail, these great-grandchildren of the testator, upon the decease of Mrs. Turley, took the portions of the estate devised, which their respective mothers would have taken if they had survived her.
It is said, hoAvever, that this plain and obvious intent of the testator, that upon the death of his daughter, Fanny, her portion of the estate should, in a certain event, pass to the *179 living descendants of her children born after the will was made and dying during her lifetime, can not be carried out because it is in direct conflict with the “ act to restrict the entailment of real estate,” passed February 17, 1811 (Swan & Critchfield”s Stat. 550), which reads as follows :
“ That from and after the taking effect of this act, no estate in fee simple, fee tail, or any lesser estate in lands or tenements, lying within this State, shall be given or granted, by deed or will, to any person or persons, but such as are in being, or to the immediate issue or descendants of such as are in being, at the time of making such deed or will; and that all estates given in tail, shall be and remain an absolute estate in fee simple, in the issue of the first donee in tail.”
What is to be understood by the terms, “ immediate issue,” and “ immediate descendants,” as employed in the above recited act ?
The counsel for the plaintiff insists that both terms indicate only one and the same class of persons, that is, living children of Mrs. Turley, and that neither include living children of her pre-deceased children.
The presumption always is, that every word in a statute is designed to have some effect, and hence the rule that, “in putting a construction upon any statute, every part shall be regarded, and it shall be so expounded, if practicable, as to give some effect to every part of it. Commonwealth v. Alger, 7 Cushing, 89.
The word “ issue,” without the qualifying word, “ immediate,” would, undoubtedly, include grandchildren and great-grandchildren of the person to whose issue the bequest is made. 2 Williams on Ex. 252; 2 Jarman on Wills, 255, note. But we incline to the opinion that the qualifying word, “ immediate,” prefixed to it in the clause referred to, limits the phrase to the children merely of the person in being, etc.; and we do this the more readily, as we are satisfied that the remoter lineal descendants, if living at the death of the person in being when ‘ the will was. made, are included in the phrase, “ immediate descendants.”
In order to determine whether the words, “ issue,” and “ de *180 scendants,” used in the act, refer only to one and the same, class of persons, or whether the one is more extensive than the other, we may very properly look to the entire law and its title, as well as the mischief or defect it was designed to remedy; and also to the other statutes in relation to the inheritance and transmission of estates.
As it was said by Lord Ch. J. Tindall, in the dukedom of Sussex case, 8 Lond. Jur. 795, “ If any doubts arise from the language employed by the legislature, it has always been held as a safe means of collecting the intention, to call in aid the ground and cause of malcing the statute, and to have recourse to the preamble, which, according to Chief Justice Dyer, is a key to open the minds of the makers of the act, and the mischiefs they intended to redress.” Sedgwick on Stat. Law, 289.
The statute is a restraining, and not an enabling act. The power to devise real and personal estate, with the formula to be observed and the legitimate subjects of a testamentary disposition, are all defined and prescribed in the general act “ relating to wills,” and cognate enactments, and the only object of the act of February 17, 1811, was to prevent the creation of perpetuities and impolitic clogs upon the jus disponendi of real estate. To this end, it prohibits a devise of an interest in land to any one but a person or persons in being a.t the time of making the will, or to the immediate issue or descendants of such persons. It does not affect to define, and much less to alter, the rules of inheritance or descent. The will of George Harness, Jr., viewed in the light of the statute of descents, is nothing more than a devise to Fanny Harness for life, with remainder in fee to her heirs at law. It is “ to her for life, and at her death to her child or children then living, and the descendants of such as may be dead, equally, to be divided per stirpes.” If this will tends to create a perpetuity, the statute of descents is alike obnoxious to the charge, and in conflict with the act of February 17,1811.
The devise of George Harness, Jr., then, of the remainder upon the death of his daughter, to the living descendants of such as had pre-deceased, created no greater perpetuity than *181 ■the general act “ regulating descents and distributions ” itself authorized, and is not therefore within the evils which the act •of February 17, 1811, was intended to remedy.
But there is a plain and broad distinction between the terms “ children” and “ descendants,” the one indicating only lineal descendants, while the other includes both lineal and collateral relations — all, in short, that would then take the estate under the statute of descents, if George Harness had died intestate. All such persons may not be in fact, but they are in law, the descendants of the person from whom they receive the estate. Upon the same principle, it has repeatedly been held in Ohio, that the term “ ancestor,” as used in the statute of descents and distribution, means him from whom the estate was inherited — whether father, uncle, nephew, younger or elder brother, and the like. Lessee of Pritchett v. Parker, 3 Ohio St. Rep. 397; Brewster v. Benedict, 14 Ohio Rep. 385. So a devise “to my relations,” is in construction limited to such relations as would be entitled to take under the statute of distributions. 5 Yesey, 529; 2 Williams Ex. 956, and cases cited. The superadded word “ immediate,” merely requires that the person entitled to take must be one to whom, in case of intestacy, the estate would immediately descend, and this a statute designed to prevent perpetuity should very properly require. If the terms had been used disjunctively, and the superadded words “ of those who may be dead, equally, to be divided per stirpes,” omitted, the word “ descendants ” might possibly have been regarded as substitutional, and as such not entitled to take except upon a failure of living children ; but we think the intention of the testator clear and incontrovertible, that the children of Mrs. Cunningham and Mrs. Johnson are to take the shares of the lands embraced in ■the petition, which their respective mothers would have taken if they had survived Mrs. Turley, and that the devise to them is not in conflict with the act to restrain the entailment of real estate. The devise is in perfect harmony with the statute and with the principles of public policy which gave rise to it Immediately upon the termination of the life estate. *182 the entire inheritance is thereby cast upon persons in full life, and legally capable of receiving and transmitting the same.
This view of the case renders it unnecessary to examine the other point made by the counsel for the defendant, viz.: that the rule in Shelley’s case is applicable to this devise, it having been made long before the statutory abrogation of that rule, in A. D. 1840, and that Mrs. Turley, under that rule, became and was the first donee in tail of the estate, so that by the operation of the' last clause of the act of February 17, 1811, the same became an absolute estate in fee simple in her “ issue ” generally, including in that term the children of Mrs. Cunningham and Mrs. Johnson.. The rule in Shelley’s case is at best an artificial one, which in its practical application often defeats the real intention of the testator, and would not be applied in the country from which it was borrowed to a case like the present, where a life estate is expressly given, and the remainder limited to the "children,” and not to the “ heirs.” It is true that the law of primogeniture, which prevents its application in England to a devise to children, does not obtain here; but the rule itself finds but little favor in this country, and ought not to be extended. In King v. Beck, 15 Ohio Rep. 559, it was held that a devise to C. for life, with remainder to his heirs in fee, did not create a fee in C., because it was inferred from the will that' the testator intended he should take no more than a life estate. If the rule in Shelley’s case, thus modified, were applied to the devise to Fanny Harness, she would not, in our opinion, take an estate tail, but only a life estate. The express devise to her for life, and the employment of descriptive words, which • are peculiarly words of purchase and not of limitation, to indicate the recipients of the fee, added to the special reference made to the descendants of pre-deceased children, clearly evince an intention on the part of the testator to create a life estate only in his daughter, and to make the children and their descendants the primary donees of the remainder in fee. We are, therefore, of the opinion that the children of Mrs. Cunningham and Mrs. Johnson named in the agreed case, are entitled, under the will of George Harness, Jr., to the shares *183 in the lands specified in the petition, to which their respective mothers would have been entitled if they had survived Mrs. Turley; and the cause is therefore remanded to the district court of Scioto county for further proceedings in accordance with the construction we have given of the will of George Harness, Jr., deceased.
Brinkerhoee, C.J., and Scott, . Sutliee and Gholson, JJ., concurred.